UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|         Respondent, ) | |
| v. ) | No. 17 CV 50205 |
| ) | Judge Iain D. Johnston |
| DAYTON POKE, ) | |
|         Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Dayton Poke has filed a motion under 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence. For the reasons that follow, the motion is denied.

**I.    BACKGROUND**

According to the government at trial, two Rockford police detectives, Kevin Nordberg and Maurice Pruitt, pulled over Mr. Poke after he turned the Chevy Impala he was driving into a driveway without signaling. Dkt. 141 (in criminal case) at 225-26. While approaching the car, one of the detectives noticed Mr. Poke put something under the driver's seat, and when Mr. Poke exited the car the detective saw a gun under the driver's seat. *Id.* at 226-27. The detectives handcuffed and arrested Mr. Poke, recovered the gun, and during a search of the car found crack cocaine in the center console. *Id.* at 227-28.

A jury found Mr. Poke guilty of possessing with the intent to distribute cocaine base, *see* 21 U.S.C. § 841(a)(1); possession of a firearm by a felon, *see* 18 U.S.C. §§ 922(g)(1) and 924(e)(1); and possession of a firearm in furtherance of a drug offense, *see* 18 U.S.C. § 924(c)(1)(A). Judge Kapala, who has since taken inactive senior status, sentenced Mr. Poke to 420 months' incarceration. Mr. Poke filed a direct appeal, and the Seventh Circuit remanded because of possible double counting when calculating Mr. Poke's sentence. On remand, Judge Kapala sentenced Mr. Poke to 400 months' incarceration, which the Seventh Circuit affirmed on appeal. The Supreme Court denied Mr. Poke's petition for a writ of certiorari.

Mr. Poke then filed the instant motion under § 2255. Judge Kapala dismissed the motion because Mr. Poke had procedurally defaulted all but one of the grounds asserted by failing to raise those grounds in his direct appeal, and also because those grounds were meritless. As for the remaining claim of ineffective assistance of counsel, Judge Kapala held that it was wholly frivolous. Judge Kapala also denied a motion for reconsideration. Although Judge Kapala denied a certificate of appealability, Mr. Poke obtained one from the Seventh Circuit. On appeal the parties filed a joint motion to vacate Judge Kapala's order denying Mr. Poke's § 2255 motion because it had not addressed all of Mr. Poke's claims of ineffective assistance of counsel in violation of Seventh Circuit Rule 50. The Seventh Circuit granted the motion, vacated the order, and remanded for further proceedings.

In his § 2255 motion, Mr. Poke seeks to vacate, set aside, or correct his sentence based on the following arguments.

1. The district court erred denying his pre-trial motion to suppress evidence and quash his arrest because at the suppression hearing, the officers testified inconsistently and perjured themselves (Dkt. 1 at 4-5);

2. The district court denied him a fair trial because the officers testified inconsistently and perjured themselves, and because it excluded an affidavit from his witness Daron Cistrunk and deemed Cistrunk unavailable to testify even though he was in the courtroom (Dkt. 1 at 5);

3. Each of his defense attorneys rendered ineffective assistance of counsel for various reasons (Dkt. 1 at 5);

4. The district court improperly applied sentencing enhancements for being an armed career criminal, *see* 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4(a), and as a career offender, *see* U.S.S.G. §4B1.1 (Dkt. 1 at 5-6);

5. The district court improperly denied him a downward departure for cooperation he provided to the government, and did not require the government to explain why it never sought the downward departure (Dkt. 1 at 17); and

6. There was grand jury abuse and prosecutorial misconduct (Dkt. 1 at 23).

Following remand, the government filed its response to Mr. Poke's § 2255 motion, and Mr. Poke replied. The motion is now fully briefed.

**II. ANALYSIS**

Criminal defendants may collaterally attack the validity of their sentences by filing a motion under 28 U.S.C. § 2255, but only if "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is extraordinary, and it is not a substitute for a direct appeal. *See Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006). As a result, issues not raised at trial or on direct appeal are barred from collateral review and procedurally defaulted unless the defendant can show both cause and prejudice from the failure to appeal. *See McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). Absent a showing of cause and prejudice, procedural default will be excused only if the defendant establishes that the default would lead to a fundamental miscarriage of justice, such as the conviction of one who is actually innocent. *See Gladney v. Pollard*, 799 F.3d 889, 895-96 (7th Cir. 2015). In a similar vein, issues that were raised on direct appeal may not be reconsidered under § 2255 absent changed circumstances. *See Valera v. United States*, 481 F.3d 932, 935-36 (7th Cir. 2007). To succeed, a movant must offer more than vague or conclusory

allegations, and instead must offer detail and specifics. *See Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015).

With these parameters in mind, the Court turns to Mr. Poke's individual arguments.

### A. Procedurally Defaulted Claims

The Court begins with all of Mr. Poke's claims other than his ineffective assistance of counsel claims. In his first and second claims, Mr. Poke alleges that the district court erred when it denied his motion to suppress and denied him a fair trial because of inconsistent and perjured testimony from officers. He contends that the district court also denied him a fair trial by excluding evidence from one of his witnesses, Daron Cistrunk, from whom Mr. Poke had obtained an affidavit in which Cistrunk claimed as his own the gun detectives found in the Impala. These are arguments Mr. Poke could have raised on direct appeal, and he has offered no explanation for why he did not. In an attempt to excuse his procedural default, he offers what he contends is new evidence of his actual innocence: that if called as a witness at trial, Cistrunk and other witnesses would have testified that numerous other persons used the Impala, casting doubt on whether the firearm found in the Impala was Mr. Poke's or whether he was aware of its presence. But the district court was aware of Cistrunk's affidavit statement in which he claimed ownership of the gun, and so that is not new evidence. Rather, Mr. Poke appears to rely on the same evidence offered before and during trial, and is merely attempting a second bite at the apple. *See Kafo*, 467 F.3d at 1068 (§ 2255 is not a substitute for direct appeal).

The other proposed witness Mr. Poke named, Amy Favors, allegedly owned the Impala, but Mr. Poke offers no affidavit from her or other evidence that she would have testified that she or others who drove the car left behind a gun. The actual innocence standard is demanding: it is "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error," *Schlup v. Delo*, 513 U.S. 298, 316 (1995), and that "no reasonable juror would have convicted him in the light of the new evidence," *id.* at 327. Evidence that someone else left a gun in the car unbeknownst to Mr. Poke might have established his actual innocence of the firearm charge. But Mr. Poke's speculation that other witnesses would have testified merely that they had driven the Impala in the days leading up to his arrest, without also testifying that the gun was theirs, does not convincingly suggest "that no reasonable juror would have convicted him" based on such testimony. *Gladney*, 799 F.3d at 899.

Mr. Poke's fourth claim appears to consist of two parts. First, he contends that the government did not meet its burden to "show the existence of the prior conviction[s] and the nature of the prior[s] . . ." that were used to enhance his sentence. Dkt. 1 at 6. This appears to be an argument about the sufficiency of the evidence that he had prior convictions that Mr. Poke could have raised on direct appeal, and he offers no explanation for why he did not, or new evidence of his actual innocence to excuse the procedural default.

Second, he argues that his prior offenses were not the type of predicate offenses that trigger enhancements under the Armed Career Criminal Act or the career offender provisions of

the U.S. Sentencing Guidelines.[1]  In support he relies on cases such as *Mathis v. United States*, 136 S. Ct. 2243, 2250 (2016), in which the Supreme Court addressed the limited circumstances in which courts can use the modified categorical approach to determine whether a state statute covers a broader range of conduct than a federal statute.  Generally speaking, a conviction under a state statute that covers broader conduct than the corresponding federal statute (or the generic offense if there is no corresponding federal statute) may not be available to use as a predicate offense for statutory-based sentencing enhancements.  *See Taylor v. United States*, 495 U.S. 575 (1990).  The analysis of that issue involves using the categorical approach, whether a state statute is divisible or indivisible, and if it is divisible whether the court may then use a modified categorical approach.  *See Descamps v. United States*, 570 U.S. 254 (2013).

But none of that matters to Mr. Poke's claims.  In his motion he takes issue with the district court's use of two prior state law felony drug convictions used to enhance his sentence, arguing that the state statute under which he was convicted covers types of cocaine isomers that are not covered under the federal Controlled Substances Act.  *See* Dkt. 1 at 14; Dkt. 55; Dkt. 56.  However, in applying the Armed Career Criminal Act enhancement, the district court relied not only on those two prior state felony drug convictions, but also three prior state convictions for violent felonies, including two convictions for aggravated battery and one for robbery.  *See* Presentence Investigation Report (Crim. Dkt. 112) at 9.  The enhancement under 18 U.S.C. § 924(e) applies to persons with "three previous convictions . . . for a violent felony or a serious drug offense . . ."  Mr. Poke has not challenged the use of those prior violent felonies, and so his argument that he was not subject to the Armed Career Criminal Act enhancement lacks merit.

His motion he also takes issue with the use of those same two prior state felony drug convictions to enhance his sentence under the career offender provision of the U.S. Sentencing Guidelines.  *See* U.S.S.G. 4B1.1.  As opposed to enhancements under statutes like the Armed Career Criminal Act, the Guidelines' definition of controlled substances does not incorporate the definitions found in the federal Controlled Substances Act.  *See United States v. Ruth*, 966 F.3d 642, 651-54 (7th Cir. 2020).  Thus, some state drug offenses may serve as predicate offenses for enhancements under the Guidelines even though those same offenses could not serve as the basis for enhancements under federal statutes.  As a result, this argument also lacks merit.

In Mr. Poke's fifth claim, he contends that the district court erred by failing to reduce his sentence for cooperation he contends he provided to the government in murder investigations.  The government can move for a departure from a Guidelines sentence under U.S.S.G. § 5K1.1 based on a defendant's cooperation, but it did not do so for Mr. Poke.  Whether to file such a motion is within the discretion of the government unless the government fails to file a motion based on a prohibited basis, such as the defendant's race, which is not what Mr. Poke has alleged.  *See Miller v. United States*, 183 Fed. Appx. 571, 581 (7th Cir. 2006).  Mr. Poke cites to several cases for the proposition that a sentencing court is required to conduct a hearing into why the government refused to file a § 5K1.1.  But the only one of those cases that addresses the government's failure to seek a reduction based on cooperation involved a plea agreement in

---

[1] Mr. Poke clarified the basis of this argument in his proposed Second and Third Amendments to his § 2255 motion, *see* Dkts. 55 and 56.  Mr. Poke never sought or obtained leave to amend his § 2255 motion, and the government never had a chance to respond to the arguments and authorities they contain.  But, for the sake of completeness and because his arguments are ultimately unavailing, the Court has taken them into account.

which the government had promised to do so, which is inapplicable because Mr. Poke did not enter into a plea agreement. *See United States v. Miller*, 458 F.3d 603, 604-05 (7th Cir. 2006). In any event, Mr. Poke could have but did not raise this argument on appeal, and he has offered no good cause for failing to do so.

In Mr. Poke's sixth claim he argues that during grand jury proceedings, the government misstated facts, failed to present exculpatory evidence, and asked leading questions of a witness. This claim is also procedurally defaulted because Mr. Poke did not raise it on direct appeal and offers no good cause for failing to do so. In addition, "a petit jury's guilty verdicts render harmless any possible error in the grand jury proceedings." *United States v. Morgan*, 384 F.3d 439, 443 (7th Cir. 2004).

### B.     Ineffective Assistance of Counsel Claims

Before addressing Mr. Poke's allegations of ineffective assistance of counsel, the Court first notes the various sources of his allegations. Most of the allegations come from his original § 2255 motion, Dkt. 1, which he also addressed in his motion for reconsideration, Dkt. 5. After remand, Mr. Poke included in his reply brief what he called an "Amendment to my 2255 motion." Dkt. 47. The filing does not distinguish between what was submitted in reply to the government's response brief and what was offered as an amendment to his § 2255 motion, and was filed without first obtaining leave to amend. And as noted above, Mr. Poke also filed additional amendments, again without first obtaining leave to amend. See Dkts. 50, 55 and 56. Nevertheless, for the sake of completeness the Court has taken into account all of the material submitted and allegations of ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, criminal defendants must establish both prongs of a two-prong test:  (1) their attorney's performance was so deficient that it fell below an objective standard of reasonable competence, and (2) the attorney's performance prejudiced their defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). In other words, defendants must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the proceeding's result would have been different." *Id.* at 694. When evaluating counsel's performance, a court must avoid playing Monday morning quarterback, and instead must "evaluate the conduct from counsel's perspective at the time," and "must indulge a strong presumption that counsel's conduct falls within a wide range of  reasonable professional assistance." *Id.* at 689. Allegations of deficient performance must be supported by facts, not conclusory allegations or speculation. Criminal defendants bear the burden of proof and persuasion in establishing an ineffective assistance of counsel claim. *See United States v. Turcotte*, 405 F.3d 515, 537 (7th Cir. 2005).

Claims of ineffective assistance of counsel are properly raised for the first time in collateral proceedings, such as a motion under § 2255, because they often rely on evidence outside of the record. *Fountain*, 211 F.3d at 433-34. Accordingly, Mr. Poke's ineffective assistance of counsel claims are not procedurally defaulted, and the Court addresses each claim in turn.

1.  **Handing Cistrunk's Affidavit Over to the Government**

Mr. Poke contends that his first defense attorney, Paul Gaziano, provided him with ineffective assistance of counsel by giving to the government Cistrunk's affidavit. According to Mr. Poke, in the affidavit Cistrunk stated that the gun officers found was his, not Mr. Poke's. Mr. Poke contends he was prejudiced because instead of using the affidavit to prepare a defense for Mr. Poke, counsel gave the affidavit to the government so it could "start br[eak]ing down my case." Dkt. 1 at 5. Specifically he contends that the government ordered a handwriting analysis of the affidavit to determine if Mr. Poke had written the affidavit himself. *Id.*

Mr. Poke has pointed to no authority under which counsel's performance is deficient by sharing potentially exculpatory evidence with the government, or sharing it too soon. To the contrary, it appears that the parties exchanged discovery, *see* Dkts 1 at 12 (former defense counsel sent new defense counsel a copy of the discovery). 25, Ex. 2 at 1 (the government's supplemental production of discovery to the defendant), in which case defense counsel was obligated to reciprocate the government's compliance with requests for discovery, *see* Fed. R. Crim. P. 16(b)(1)(A). In addition, defense counsel did use the Cistrunk affidavit to prepare, as evident from a motion by his second defense attorney, Mark Byrd, to continue the trial date because counsel had interviewed Cistrunk about the statements in his affidavit in June 2012, but since had been unable to locate him to talk further or to serve him with a trial subpoena. Poke Criminal Case No. 11 CR 50062 ("Crim.") Dkt. 64. Moreover, Mr. Poke has not identified how giving the affidavit to the government prejudiced him—the handwriting analysis was inconclusive. Dkt. 25, Ex. 2 at 2.

Because Mr. Poke has not established that counsel's performance was deficient or that he was prejudiced by that performance, he has not established this claim of ineffective assistance of counsel.

2.  **Failing to Call Cistrunk at Trial**

Mr. Poke contends that his defense counsel at trial, Brendan Caver, was ineffective for failing to call Cistrunk as a witness. In support, Mr. Poke offers two arguments. First, he contends that defense counsel should not have agreed that Cistrunk was an "unavailable" witness because Cistrunk was sitting in the courtroom. But the district judge considered Cistrunk to be unavailable not because he was physically unavailable, but rather because the parties agreed that Cistrunk planned to invoke his Fifth Amendment right not to incriminate himself, *see* Crim. Dkt. 96 at 2. Second, Mr. Poke contends that despite Cistrunk's invocation of the Fifth Amendment, defense counsel should have called him at trial anyway. But deciding to not call a witness who has invoked the Fifth Amendment right against self-incrimination is not objectively unreasonable in the absence of evidence that the witness would have waived the right. *See Timms v. United States*, 375 F. Supp. 2d 781, 786 (N.D. Ill. 2005). Mr. Poke has not pointed to any evidence that Cistrunk would have reversed course and waived the right he already invoked. Moreover, Mr. Poke has not established that he was prejudiced by defense counsel's decision not to call Cistrunk as a witness. Even if Cistrunk had offered testimony that the firearm in the car was his and that Mr. Poke had no reason to know the firearm was in the car, the district court had already determined when excluding the affidavit from trial that Cistrunk's testimony on that issue was

untrustworthy because of multiple inaccuracies. *See* Crim. Dkt. 96 at 3-4. The inaccuracies gave counsel an additional valid reason not to attempt to call Cistrunk as a witness. Mr. Poke has therefore not established that had Cistrunk testified and been subject to cross-examination, there would have been a reasonable probability of the results of his proceeding would have been different.

### 3. Failing to Interview Pittman

Next, Mr. Poke contends that defense attorney Byrd was ineffective for failing to interview witness Stonewall Pittman. Counsel is required to investigate possible lines of defense including possible witnesses. *See Blackmon v. Williams*, 823 F.3d 1088, 1104 (7th Cir. 2016). But counsel is not obligated to present every witness suggested, and need only make an informed decision. *Id.* Mr. Poke contends that instead of interviewing Pittman, counsel "gave the government my witness name months before trial and sent the government to talk to [our] witness where the government harassed him and discourage[d] him to come in and testify." Dkt. 1 at 12.

Mr. Poke does not identify his basis for alleging that defense counsel never interviewed Pittman. In contrast, Pittman told investigators on February 5, 2013, that he had spoken to Mr. Poke's attorney "last summer." Dkt. 25 at 18. Mr. Poke has also failed to identify how he was prejudiced. He never identifies what testimony Pittman would have offered, let alone information that would have changed the outcome of his trial. And according to Pittman's statements in 2013, his testimony would not have been helpful. When investigators asked him what he knew about the firearm with which Mr. Poke was charged, Pittman responded, "From what they said, it was Daron [Cistrunk]'s," but refused to elaborate, such as who told him the gun was Cistrunk's. *Id.* Plus according to investigators' report, jail recordings captured Pittman and Mr. Poke discussing a plan to have someone else claim ownership of a gun.

Mr. Poke failed to establish that counsel failed to interview Pittman, and that counsel's decision to do no more with Pittman after the initial interview was anything other than a strategic decision, which is "virtually unchallengeable." *See Strickland*, 466 U.S. at 690-91.

### 4. Failing to Move to Suppress Traffic Stop

Next, Mr. Poke argues that defense attorney Byrd was ineffective by failing to challenge the traffic stop that ultimately led detectives to search his car and arrest him. The district court denied counsel's motion to suppress evidence found in Mr. Poke's car and his subsequent arrest, but in the motion counsel did not challenge officer's initial stop of the Impala for failing to signal before turning into a driveway. Mr. Poke contends that had counsel challenged the initial stop, the district court might not have believed detectives' testimony that Mr. Poke failed to signal before turning. Instead, Mr. Poke argues, the district court might have found that the real reason detectives stopped him was because they had been watching the Impala suspecting it was connected to a murder, that their stop of Mr. Poke was therefore without probable cause, and that evidence found in the car and Mr. Poke's arrest were all fruit of the poisonous tree.

However, Mr. Poke never contends that he failed to signal. An ulterior motive for a traffic stop does not render the stop invalid as long as an officer had an objective reason for making the stop. *See Whren v. United States*, 517 U.S. 806, 812-13 (1996). In the absence of any evidence that Mr. Poke signaled before turning, defense counsel was not ineffective for failing to challenge the traffic stop.

### 5. Failing to Call Ivancich and Favors at Trial

Mr. Poke argues that his defense attorney Caver was also ineffective for failing to call both ATF special agent Daniel Ivancich and Amy Favors as witnesses at trial. In his motion, Mr. Poke does not specify what testimony they would have offered. On appeal his appointed attorney suggested that Ivancich might have testified about investigating whether someone other than Mr. Poke owned the gun officers found in his car, but Mr. Poke never alleges that Ivancich conducted such an investigation, or what his testimony about an investigation would have revealed. According to the government, Ivancich talked to Cistrunk about who owned the gun, and Cistrunk allegedly admitted in response that the gun was his. *See* Crim. Dkt. 81 at 2. But Judge Kapala excluded evidence of what Cistrunk told Ivancich. *See* Crim. Dkt. 96. Given the order excluding evidence of what Cistrunk allegedly told Ivancich, and the lack of information about what else Ivancich would have testified, Mr. Poke has not satisfied his burden of establishing a reasonable probability that Ivancich's testimony would have changed the outcome of the trial.

As for Favors, Mr. Poke never identifies what testimony she would have offered, and on appeal his counsel suggested only that she "could have offered favorable testimony" without elaboration. Dkt. 47 at 30. In his reply brief, Mr. Poke states that "Amy" owned the car and that his friends had driven the car shortly before his arrest. *Id.* at 4. But even if Favors was among the friends that drove the car recently, Mr. Poke has offered nothing more than speculation that had she testified, she would have tied herself to the gun found when Mr. Poke was driving the car. To allow a court to evaluate the probable effect of testimony from a proffered witness, a defendant must at least identify what the witness was actually prepared to testify. *See, e.g., United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit."). On appeal Mr. Poke's assigned counsel noted that on remand Mr. "Poke would have the opportunity to amend his petition to add additional details regarding the ineffectiveness claims," *see* Dkt. 47 at 25, but even then he provided no specifics on what testimony Favors was actually prepared to offer. In the absence of evidence of what Favors would have testified, Mr. Poke has not established a reasonable probability that, given all of the circumstances, the results of his proceeding result would have been different.

### 6. Failing to Raise *Brady* Claim About Handwriting Analysis and OPS Report

Next. Mr. Poke contends that defense counsel Caver was ineffective because he did not alert the district court to the government's failure to produce the results of a handwriting analysis and the "OPS Statement," which he contends constituted a violation of the government's obligation under *Brady* to provide potentially exculpatory evidence. But the government did

produce the results of the FBI's handwriting analysis to defense counsel Byrd on November 29, 2012. Dkt. 25-2 at 1.

Turning to the OPS Statement, according to Mr. Poke, it contains information showing that one of the detectives who testified against him at trial is a liar because he used a copier at work to send a sexually explicit letter to a woman with whom he was having an extra-marital affair. But Mr. Poke has not provided the OPS Statement, or explained how he knows what is in it. To the extent such an incident is relevant, Mr. Poke's description of it lacks details, such as whether the officer was disciplined, or whether the allegation was determined to be unfounded. Without the report or details of what is in it, this Court cannot assess whether the evidence was potentially exculpatory, subject to disclosure under *Brady*, and more specifically to the analysis of a claim of ineffective assistance of counsel, whether there was a reasonable probability that evidence of the officer's alleged misuse of the copier would have affected the results of the proceedings against Mr. Poke.

### 7. Failing to Request a Plea Agreement

Mr. Poke argues that his attorneys were also ineffective because they refused his requests to ask the government for a plea agreement. Specifically, Mr. Poke contends that "I didn't want to go to trial and they all refuse and I was force[d] to go to trial with lawyers that didn't have my best interest at heart." Dkt. 1 at 13. But the record does not support Mr. Poke's contention. During a hearing on March 25, 2013, Mr. Poke told Judge Kapala that he and defense counsel Byrd met with the government, during which he "disclosed an amount of information to the government, you know what I'm saying, murders, drugs, people selling guns, in return for a plea deal," but the government responded that it was not willing to agree to the substantially below Guidelines sentence Mr. Poke was seeking. Crim. Dkt. 79 at 13-22. Mr. Poke also stated that he was "not scared of going to trial. I understand what I'm facing." *Id.* at 12. Because the record establishes that counsel did seek a plea agreement from the government and that Mr. Poke was prepared to face trial, he has not shown that his counsel were ineffective for failing to seek a plea.

### 8. Failing to Object to Leading Questions

Finally, Mr. Poke argues that defense attorney Caver was ineffective for failing to object to leading questions the government asked detectives Nordberg and officer Richard Dodd. According to Mr. Poke, Nordberg gave conflicting testimony about the recovery of Mr. Poke's cell phone, first testifying that he did not know where it was recovered and that a plastic evidence bag he saw at the scene was empty, then testifying that he recovered the phone from Mr. Poke, and finally in response to a leading question from the government testifying that he obtained it from officer Dodd. According to Mr. Poke, Nordberg's final answer, the one elicited by the government's leading question, is consistent with the response officer Dodd gave in response to another leading question, in which he testified that he gave Mr. Poke's phone to Nordberg in a plastic evidence bag. Mr. Poke contends that the shifting testimony establishes that the two witnesses were lying. But Mr. Poke does not explain how defense counsel's failure to object to the questions that elicited the shifting testimony prejudiced him. Rather, the conflicting testimony could have been used to cast doubt on the accuracy of both witness'

recollection of events and their believability. Mr. Poke has therefore not established a reasonable probability that objections to the leading questions would have changed the outcome of the trial.

### III. CONCLUSION

For the reasons given, Mr. Poke's motion [1] under 28 U.S.C. § 2255 challenging his sentence is denied. This matter is terminated.

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings for the United States District Courts, the Court declines to issue a certificate of appealability. A certificate may issue only if defendant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The court finds that while defendant has attempted to raise constitutional claims through his motion for relief under § 2255, his claims are either procedurally defaulted and/or without merit, and the Court does not find that "reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *See Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (quotations omitted). As such, the Court declines to issue a certificate of appealability.

Date: April 27, 2021     By: _____
                              Iain D. Johnston
                              United States District Judge